# United States District Court
### NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA, ex rel. EMERSON PARK, Plaintiff, | § § § § | |
| v. | § § | CASE NO. 3:16-CV-803-S |
| LEGACY HEART CARE, LLC, et al., Defendants. | § § § | |

## MEMORANDUM OPINION AND ORDER

This Order addresses (1) Defendants Legacy Heart Care, LLC; Legacy Heart Care of Fort Worth, LLC; Legacy Heart Care of Austin, LLC; Legacy Heart Care of Midtown Austin; LLC, Legacy Heart Care of South Austin, LLC; Trinity Heart Care; Legacy Heart Care of San Antonio, LLC; Legacy Heart Care of Kansas City, LLC; Legacy Heart Care of Phoenix, LLC; Legacy Heart Care of Charlotte, LLC (collectively, "LHC" or the "LHC Entities"); and LHC President Michael Gratch's ("Gratch" and collectively with LHC Entities, the "LHC Defendants") Motion to Dismiss Relator's Amended Complaint [ECF No. 42] and (2) Defendants Tuan D. Nguyen, Vu D. Nguyen, Vinh D. Nguyen, Michael Grad, and Nima Amjadi's (collectively, the "Medical Director Defendants") Motion to Dismiss the Amended Complaint [ECF No. 45].

For the reasons that follow, the Court grants the Motions. The Court also grants in part the request for leave to file an amended complaint made by Relator in his response. *See* Resp. 35.

### I. BACKGROUND OF THE CASE

#### *A. Procedural History*

Pursuant to Special Order 3-318, this case was transferred from the docket of Judge Sam A. Lindsay to the docket of this Court on March 8, 2018.

1

This is a *qui tam* action brought by Relator Emerson Park ("Relator") on behalf of the United States of America alleging violations of the False Claims Act ("FCA"). The FCA imposes civil liability and treble damages on any person who, inter alia, "(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" to the United States government; or "(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;" or "(C) conspires to commit a violation of [(A) or (B)]". 31 U.S.C. § 3729(a)(1)(A)-(C).

Relator filed his initial complaint under seal on March 22, 2016, against his former employer, other LHC Entities, and six individuals. On September 18, 2017, the United States filed notice that it was not intervening in the case at that time.[1] On September 19, 2017, the Court ordered that the Clerk unseal the complaint and that Relator serve all Defendants. Between December 8 and 12, 2017, Relator served the complaint on all Defendants.

The LHC Defendants and the Medical Director Defendants each filed a motion to dismiss the complaint on January 31, 2018. Relator filed an amended complaint on February 21, 2018. All Defendants filed the pending motions to dismiss on March 7, 2018. The parties then stipulated to the filing of the Second Amended Complaint, which was filed with the Court on April 7, 2018. The Second Amended Complaint is identical to the amended complaint, with the exception of three changes clarifying the parties to the suit. The parties agreed that the Second Amended Complaint did not moot or otherwise affect Defendants' pending motions to dismiss. In all, Relator brings this suit against ten LHC Entities, Gratch, and five Medical Director Defendants.

The parties appeared before the Court for oral argument on the pending motions to dismiss on July 25, 2018.

---

[1] As of the date of this Order, the United States has not yet filed a Notice of Intervention in this case.

## B. Origins of the Claim

Relator worked for seven months in 2015 at the Austin LHC clinic as a scribe. Second Am. Compl. ¶ 20. LHC is a provider of Enhanced External Counterpulsation ("EECP"), an outpatient treatment for patients with persistent and disabling angina. *Id.* ¶ 2. Relator alleges that despite Medicare's regulations limiting EECP to the most extreme and dire circumstances, Defendants certified patients for this treatment even though the majority of patients did not meet the basic diagnostic criteria required by Medicare. *Id.* ¶ 3.

According to Relator, Defendants were engaged in a scheme to bill Medicare for medically unnecessary EECP treatments. *Id.* ¶ 6. Relator alleges that LHC accomplished this by asking the Medical Director Defendants to universally certify virtually every patient seeking treatment, even when they lacked the required diagnostic criteria to be eligible for EECP treatment. *Id.* For example, Relator alleges that LHC routinely enrolled patients with congestive heart failure for EECP treatments despite the fact that Medicare dictates that EECP treatments are strictly limited to patients with "coronary artery disease" and explicitly precludes the use of EECP for treating heart failure. *Id.* ¶ 136.

Relator further alleges that the LHC Defendants paid kickbacks to the Medical Director Defendants. *Id.* ¶ 8. For example, according to Relator, the LHC Defendants paid the Medical Director Defendants thousands of dollars a month to show up for less than an hour a week, and this compensation was far in excess of the fair market value for the limited services they provided. *Id.* ¶ 226. Relator alleges that these kickbacks were intended to induce the Medical Director Defendants to refer their private practice patients to LHC. *Id.* ¶ 236. According to Relator, one-third of LHC's patients were referred by the Medical Director Defendants. *Id.* ¶ 223.

Relator also alleges that a key component of the LHC Defendants and the Medical Director Defendants' scheme involves the provision of Evaluation and Management ("E/M") services, which refer to a physician-patient encounter. *Id.* ¶ 73. Medicare has adopted a five-level billing code system for providers to utilize when billing for E/M services. *Id.* ¶ 79. Higher-level codes receive substantially higher reimbursement and involve the provision of more extensive services involving complex medical decision-making. *Id.* Relator alleges that Defendants systematically "upcoded" E/M services. *Id.* ¶ 179. Upcoding refers to the practice of billing Medicare for services or equipment designated under a code that is more expensive than the code for what a patient actually needed or was provided. *Id.* ¶ 81. Relator alleges that despite the Medical Director Defendants seeing patients for only five to ten minutes, these services were always billed to Medicare with the Level 5 billing code. *Id.* ¶ 177.

Relator brings four claims against all Defendants:

- Count I: Violation of 31 U.S.C. § 3729(a)(1)(A) and (B) for medically unnecessary EECP treatment;

- Count II: Violation of 31 U.S.C. § 3729(a)(1)(A) and (B) for upcoding and billing for services never performed;

- Count III: Violation of 31 U.S.C. § 3729(a)(1)(C) for conspiracy; and

- Count IV: Violation of 31 U.S.C. § 3729(a)(1)(A) based on violations of the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b.

Defendants move to dismiss each of Relator's claims, arguing that the Second Amended Complaint fails under Rules 9(b) and 12(b)(6).[2] The Medical Director Defendants' Motion to

---

[2] The LHC Defendants also move to dismiss for failure of process and failure of service of process under Rules 12(b)(4) and (5), and for lack of jurisdiction under Rule 12(b)(2). However, the LHC Defendants abandoned these grounds for dismissal at oral argument. *See* Mot. Hr'g Tr. 7:3-5 ("[W]e still believe that the second amended complaint falls far short of the requirements under Rule 9(b) and 12(b)(6), so that's why we're here today, Your Honor.").

Dismiss incorporates by reference the arguments set forth in the LHC Defendants' Motion. Relator filed a consolidated response, and Defendants filed a joint reply.

## III. LEGAL STANDARD

### *A. The Rule 12(b)(6) Standard*

To defeat a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility does not require probability, but a plaintiff must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The court must accept well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). However, the court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

In ruling on a Rule 12(b)(6) motion, the court limits its review to the face of the pleadings. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99

5

(5th Cir. 2000). However, the court may also consider documents outside of the pleadings if they fall within certain limited categories. First, the "court is permitted . . . to rely on 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). Second, the "court may consider documents attached to a motion to dismiss that 'are referred to in the plaintiff's complaint and are central to the plaintiff's claim.'" *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010) (quoting *Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003)). Third, "[i]n deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record." *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994) (internal citations omitted); *see also, e.g., Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (stating, in upholding district court's dismissal pursuant to Rule 12(b)(6), that "the district court took appropriate judicial notice of publicly-available documents and transcripts produced by the [Food and Drug Administration], which were matters of public record directly relevant to the issue at hand." (internal citations omitted)).

The ultimate question is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002). At the motion to dismiss stage, the court does not evaluate the plaintiff's likelihood of success. It only determines whether the plaintiff has stated a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977).

### B. The Rule 9(b) Standard

Since all of Relator's claims are premised on alleged violations of the FCA, the allegations must also satisfy Rule 9(b)'s heightened pleading standard. *See United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009). Rule 9(b) requires that "[i]n alleging fraud or

mistake, a party must state with particularity the circumstances constituting fraud or mistake. FED. R. CIV. P. 9(b). "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (quoting *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992)). Put simply, 9(b) requires the "who, what, when, where, and how" of the fraud. *United States ex rel. Williams v. Bell Helicopter Textron Inc.*, 417 F.3d 450, 453 (5th Cir. 2005) (quoting *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)).

The Fifth Circuit has given Rule 9(b) a "flexible" interpretation in the FCA context in order to achieve the FCA's remedial purpose. *Grubbs*, 565 F.3d at 190. A complaint can survive a motion to dismiss by alleging "the details of an actually submitted false claim" or by "alleging particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that the claims were actually submitted." *Id.* However, this "flexible" interpretation does not absolve *qui tam* relators of the heightened pleading requirements under Rule 9(b). *United States ex rel. Nunnally v. West Calcasieu Cameron Hosp.*, 519 F. App'x 890, 893 (5th Cir. 2013).

### III. ANALYSIS

The FCA imposes civil liability and treble damages on any person who, inter alia, "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" to the United States government; or "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(A)-(B); *see also United States ex rel. King v. Solvay Pharm., Inc.*, 871 F.3d 318, 323-24 (5th Cir. 2017). Claims under § 3729(a)(1)(A) are commonly referred to as "presentment

7

claims." *United States ex rel. Colquitt v. Abbott Labs.*, 864 F. Supp. 2d 499, 511 (N.D. Tex. 2012). Claims under § 3729(a)(1)(B) are commonly referred to as "false-statement claims." *Id.* The FCA also imposes civil liability on any person who "conspires to commit a violation of subparagraph [(A) or (B)]." 31 U.S.C. § 3729(a)(1)(C).

An FCA claim consists of four elements: (1) a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due. *King*, 871 F.3d at 324 (quoting *United States ex rel. Longhi v. Lithium Power Techs., Inc.*, 575 F.3d 458, 467 (5th Cir. 2009)). "Knowingly" is defined under the statute to "mean that a person, with respect to information—(i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the trust or falsity of the information or; (iii) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1).

Relator alleges four theories of FCA liability. In Count I, Relator alleges that Defendants violated both the presentment and false-statement prongs of the FCA by approving and billing for EECP treatments that were not medically necessary. In Count II, Relator claims that Defendants violated both the presentment and false-statement prongs by upcoding and billing for services never performed. In Count III, Relator alleges that Defendants conspired to knowingly present or cause to be presented false or fraudulent claims to the United States for payment or approval. In Count IV, Relator claims that Defendants violated the presentment prong based on violations of the Anti-Kickback Statute ("AKS") for engaging in illegal financial arrangements, including unlawful compensation and referral practices.

Defendants move to dismiss each of Relator's claims, arguing that Relator fails to state a claim and fails to plead fraud with particularity.

## A. The Court Dismisses Certain Claims with Prejudice

The Court finds Relator's allegations against Defendants Michael Grad, M.D., Legacy Heart Care of South Austin, LLC, Legacy Heart Care of Phoenix, LLC, and Legacy Heart Care of Charlotte, LLC to be potentially a violation of FED. R. OF CIV. P. 11(b)(3) and an unreasonable stretch of deduction. At a minimum, they are insufficiently pled.

Despite naming Grad as a defendant in this suit, Relator does not allege any specific fraudulent or illegal conduct attributable to Grad. Beyond the caption of the pleading, Grad is only mentioned in Section III (detailing the parties), a footnote explaining where the Medical Director Defendants primarily practice, and a chart listing publicly available Medicare data for claims made for EECP treatments performed at LHC's Austin clinic. *See* Second Am. Compl. ¶¶ 29, 31, 243. In 83 pages of the Second Amended Complaint, Relator does not offer one factual allegation specifically linking Grad to the alleged fraudulent scheme aside from his employment at LHC. Simply lumping Grad in with the "Defendants" or "Medical Director Defendants" does not establish "more than a sheer possibility that [Grad] has acted unlawfully." *Iqbal*, 556 U.S. at 678.

Relator was put on notice of this pleading deficiency by the Medical Director Defendants' Motion to Dismiss and at oral argument. *See* Med. Dir. Defs.' Mot. 5; Mot. Hr'g Tr. 28:8-14. However, Relator did not address the total lack of specific allegations concerning Dr. Grad in his response, at oral argument, or in any pleading to date. Relator has already amended his pleadings twice. The Court finds that further amendment would be futile. *See Rombough v. Bailey*, 733 F. App'x 160, 165 (5th Cir. 2018) (holding that plaintiff's motion to amend could be denied as futile where plaintiff did not state claim upon which relief could be granted and did not apprise court of facts she would plead in her amended complaint). Therefore, the Court dismisses with prejudice all claims against Defendant Michael Grad, M.D.

9

In addition, Relator himself admits that three of the LHC Entities he names as Defendants—South Austin, Phoenix, and Charlotte—opened after his departure from LHC in 2015. Second Am. Compl. ¶ 3 n.2. Thus, the Court finds Relator's allegations against these three LHC Entities to be speculative, conclusory, and not based on Relator's observations and investigation. *See Twombly*, 550 U.S. at 555. The purpose of Rule 9(b)'s heightened pleading standard is to "prevent[] nuisance suits and the filing of baseless claims as a pretext to gain access to a 'fishing expedition.'" *Grubbs*, 565 F.3d at 191. After two amendments, Relator offers only speculation that the South Austin, Phoenix, and Charlotte entities were involved in the alleged fraud. Accordingly, the Court finds that amendment would be futile. The Court therefore dismisses with prejudice all claims against Defendants Legacy Heart Care of South Austin, LLC, Legacy Heart Care of Phoenix, LLC, and Legacy Heart Care of Charlotte, LLC.

### *B. The Court Dismisses Remaining Claims with Leave to Replead*

Overall, fatal to Relator's Second Amended Complaint is his failure to meet his pleading burden under Rule 9(b). The particularity requirements of Rule 9(b) apply to Relator's presentment, false-statement, and conspiracy claims with equal force. *See Grubbs*, 565 F.3d at 193. Relator does not "alleg[e] particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Id.* at 190.

#### *i. Relator Fails to Plead the Particular Details of a Scheme*

Instead of pleading the particular details of a scheme, Relator offers broad, sweeping generalizations. Relator does not identify the participants in the alleged scheme, but rather impermissibly lumps together the LHC Defendants and the Medical Director Defendants. "It is impermissible to lump all defendants together; rather, the complaint must segregate the alleged wrongdoing of one from another." *In re Parkcentral Glob. Litig.*, 884 F. Supp. 2d 464, 471 (N.D.

10

Tex. 2012); *see also Unimobil 84, Inc. v. Spurney*, 797 F.2d 214, 217 (5th Cir. 1986) ("[Plaintiff's] general allegations, which do not state with particularity what representations each defendant made, do not meet [the Rule 9(b)] requirement.").

For example, in describing the alleged scheme to provide medically unnecessary treatment, Relator groups all of the LHC Defendants together in alleging, "LHC Defendants implemented a shoddy system for certifying medical necessity whereby medical directors would mechanically certify that EECP treatments are medically necessary for all patients at LHC without having a meaningful opportunity to make a bona fide determination of medically [sic] necessity." Second Am. Compl. ¶ 107. Even when offering specific examples of how "LHC routinely violated Medicare guidelines," Relator does not allege who submitted the false claim, but instead groups the LHC Defendants together, stating, "LHC Defendants inputted the . . . CPT codes on the claim forms submitted to Medicare." *See id.* ¶¶ 126, 131-32. Moreover, Relator fails to allege that any of the unnamed patients in these examples were actually Medicare patients. *See id.* The Court also notes that these examples are isolated to the Austin clinic and name only three of the Medical Director Defendants—Drs. Tuan Nguyen, Vinh Nguyen, and Nina Amjadi.

Relator's description of Defendants' alleged practice of "upcoding" services is another illustration of Relator lumping together all of the Defendants. Relator alleges, "Starting in at least 2012 (and most likely since LHC's inception) and continuing to the present, Defendants have blatantly and knowingly upcoded its [sic] billing for E/M patient office visits to the highest-level code when not medically justified by the services provided during the actual patient encounters." *Id.* ¶ 179. Relator makes no attempt to differentiate between the Medical Director Defendants or between the individual and corporate Defendants.

11

Yet another example of Relator failing to plead the "who" with particularity is Relator's allegations regarding Defendants' alleged violations of the AKS. Relator claims that "the salaries of each Medical Director Defendant were also exorbitant on an annual basis compared to the number of hours each worked for LHC," and that "[e]ach Medical Directors [sic] Defendant knowingly received this inflated compensation in return for referring their respective patients, including Medicare patients, to LHC's Austin clinic for medically unnecessary EECP treatments." *Id.* ¶¶ 227, 229. The Court finds that this group pleading does not provide Defendants with fair notice of Relator's claims. *Grubbs*, 565 F.3d at 190 (citing *Melder v. Morris*, 27 F.3d 1097, 1100 (5th Cir. 1994)).

Relator also fails to identify when and where the alleged scheme occurred, offering only conclusory allegations that Defendants engaged in a years-long, widespread fraud across all of the LHC Entities. For example, Relator alleges, "Based on Relator's observations and investigations, LHC's fraudulent practices extend to all LHC's locations and go back to at least 2012 and continue to this day." Second Am. Compl. ¶ 169. Relator provides little factual basis for these claims. According to Relator, he confirmed the timeframe of the alleged scheme "[t]hrough his review of LHC's AdvancedMD scheduling system while he was still employed at LHC," which showed that "LHC had the same appointment calendar system as early as 2012." *Id.* ¶ 164. In support of his allegation that "LHC's fraudulent practices extend beyond its Austin locations," Relator points to LHC's standardized system of operations, including conference calls, video training, centralized billing, and mass emails. *Id.* ¶¶ 165-68. It is a stretch to allege that Defendants were engaged in a six-year-long fraud across ten different LHC Entities because of a calendar system and standardized system of operations. These conclusory allegations, as stated, do not satisfy Relator's burden of pleading the "when" and "where" of the alleged fraud with particularity. *See Nunnally*,

Yet another example of Relator failing to plead the "who" with particularity is Relator's allegations regarding Defendants' alleged violations of the AKS. Relator claims that "the salaries of each Medical Director Defendant were also exorbitant on an annual basis compared to the number of hours each worked for LHC," and that "[e]ach Medical Directors [sic] Defendant knowingly received this inflated compensation in return for referring their respective patients, including Medicare patients, to LHC's Austin clinic for medically unnecessary EECP treatments." *Id.* ¶¶ 227, 229. The Court finds that this group pleading does not provide Defendants with fair notice of Relator's claims. *Grubbs*, 565 F.3d at 190 (citing *Melder v. Morris*, 27 F.3d 1097, 1100 (5th Cir. 1994)).

Relator also fails to identify when and where the alleged scheme occurred, offering only conclusory allegations that Defendants engaged in a years-long, widespread fraud across all of the LHC Entities. For example, Relator alleges, "Based on Relator's observations and investigations, LHC's fraudulent practices extend to all LHC's locations and go back to at least 2012 and continue to this day." Second Am. Compl. ¶ 169. Relator provides little factual basis for these claims. According to Relator, he confirmed the timeframe of the alleged scheme "[t]hrough his review of LHC's AdvancedMD scheduling system while he was still employed at LHC," which showed that "LHC had the same appointment calendar system as early as 2012." *Id.* ¶ 164. In support of his allegation that "LHC's fraudulent practices extend beyond its Austin locations," Relator points to LHC's standardized system of operations, including conference calls, video training, centralized billing, and mass emails. *Id.* ¶¶ 165-68. It is a stretch to allege that Defendants were engaged in a six-year-long fraud across ten different LHC Entities because of a calendar system and standardized system of operations. These conclusory allegations, as stated, do not satisfy Relator's burden of pleading the "when" and "where" of the alleged fraud with particularity. *See Nunnally*,

519 F. App'x at 894 ("[Relator's] complaint fails to . . . even offer a time period more distinguishing than '[s]ince approximately 1992 and continuing to date.'").

### *ii. Relator Fails to Provide Reliable Indicia*

Relator also provides "no indicia of any actual knowledge of any FCA-violating fraud." *Nunnally*, 519 F. App'x at 893. Unlike the relator in *Grubbs*, Relator does not base his allegations on any actual knowledge of fraudulent scheme. In *Grubbs*, the Fifth Circuit found that "[t]he complaint sets out the particular workings of a scheme that was communicated directly to the relator by those perpetrating the fraud." *Grubbs*, 565 F.3d at 191. The relator, Dr. Grubbs, was a newly hired psychiatrist at Memorial Hermann Baptist Beaumont Hospital—a defendant in the suit. *Id.* at 184. Dr. Grubbs described in his complaint how two defendants, Dr. Groves, the Chairman of the Medical Staff of the hospital's psychiatric subsection, and Dr. Kanneganti, a psychiatrist at the hospital, invited him to dinner before his first weekend on-call shift. *Id.* According to Dr. Grubbs, "the doctors allegedly divulged to him their fraudulent billing scheme and instructed him on how he was to contribute to the scheme." *Id.* Dr. Grubbs further alleged that during his first on-call weekend, "the nursing staff did indeed attempt to assist him in recording face-to-face physician visits that had not occurred and that were based solely on information obtained through nursing contacts with the patients." *Id.* In his complaint, Dr. Grubbs claimed that when he reported the practice to the hospital administrator the next day, the administrator replied, "You certainly figured that out quickly." *Id.*

Relator does not allege in his Second Amended Complaint that any defendant or medical director described to him a scheme to defraud Medicare or recruited him to participate in such a scheme. Rather, Relator extrapolates that Defendants were engaged in widespread, years-long

13

fraud based on his employment as a scribe at one LHC clinic for seven months.[3] *See* Second Am. Compl. ¶¶ 20, 110. Relator relies exclusively on his own interpretation of the Medicare National Coverage Determination guidelines and his observations as a layperson with apparently no expertise of doctor-patient meetings to conclude that Defendants' alleged fraud "resulted in the provision of medically unnecessary EECP treatments to the majority of patients at LHC." *Id.* ¶¶ 88-121.

*Ramsey-Ledesma*, another case in which the court found reliable indicia, is also distinguishable. Unlike the relator in *Ramsey-Ledesma*, Relator does not allege that he witnessed executives from LHC "pressure physicians to make unsupported diagnoses." *United States ex rel. Ramsey-Ledesma v. Censeo Health, L.L.C.*, Civ. A. No. 3:-14-CV-00118-M, 2016 WL 5661644, at *5 (N.D. Tex. Sept. 30, 2016). Relator alleges that Nicole Kindred, Director of Billing, "routinely advised her staff to evade Medicare guidelines by directing them to fill-in diagnoses codes for disabling angina when the patient charts did not contain these diagnostic codes." Compl. ¶ 40. However, Relator did not work in the centralized billing department (located in Fort Worth), and offers no other insight as to how he gained this knowledge. Relator fails to allege that he witnessed this exchange first-hand, or that he was even told about it later by someone working in the billing department.

To bolster his allegations that Defendants violated the AKS by paying Medical Director Defendants "inflated" salaries that were "far in excess of the fair market value," Relator points to "how Candace Kreitner [the Austin clinic Office Manager] complained about how LHC

---

[3] The Court notes that Relator himself admits that he did not observe the Medical Director Defendants meeting with patients for the entire duration of his employment. In mid-July 2015, Relator was reprimanded by Nicole Kindred, Director of Billing, for improperly omitting Medicare codes, and he was no longer allowed to be in the room with the Medical Director Defendants during their appointments with patients. Second Am. Compl. ¶¶ 159, 161.

14

Defendants paid Medical Director Defendants thousands of dollars a month just to show up for less than an hour a week." *Id.* ¶ 226. The Second Amended Complaint does not identify any amount of compensation paid or in what way it was "inflated," what the fair market value of such services would have been for any particular locale, or which patients (if any) were referred to any particular LHC entity by any particular Medical Director Defendant. Relator merely "estimates that approximately one third of all LHC's patients seen at the Austin Clinic were referred to LHC by Medical Director Defendants." *Id.* ¶ 223. Furthermore, Relator does not allege any personal knowledge of any financial arrangements between the Medical Director Defendants and the LHC Entities.

"[T]he complaint in *Grubbs* rested on the relator's actual description of a solicitation by two of the defendants to the relator to participate in an elaborate scheme to defraud the government . . . ." *Nunnally*, 519 F. App'x at 893. In contrast, the Second Amended Complaint rests on Relator's personal opinions, guesses, and limited observations as a scribe with no medical background, conclusory allegations, and repetitions of grievances from co-workers. The Court finds that Relator has not provided reliable indicia of a fraudulent scheme.

### iii. *Relator's Allegations Fail to Lead to a Strong Inference that Claims Were Submitted*

Underpinning Relator's allegations is the claim that Defendants submitted false claims for reimbursement to Medicare for medically unnecessary EECP treatments and upcoded services. Though Relator does not allege the details of an actually submitted false claim, this is not fatal to Relator's claims. Relator's allegations can survive if they "lead to a strong inference that claims were actually submitted." *Grubbs*, 565 F.3d at 190.

In *Grubbs*, the Fifth Circuit found "[t]hat fraudulent bills were presented to the Government is the logical conclusion of the particular allegations in Grubbs' complaint." *Id.* at

15

192. The Fifth Circuit concluded that "[i]t would stretch the imagination to infer . . . that the defendant doctors go through the charade of meeting with newly hired doctors to describe their fraudulent practice and that they continually record unprovided services only for the scheme to deviate from the regular billing track at the last moment so that the recorded, but unprovided, services never get billed." *Id.*

In the case at hand, Relator provides conclusory allegations regarding the number of Medicare patients treated by the LHC Entities and the number of fraudulent claims actually submitted by Defendants. Relator alleges, "Based on his time working at LHC, Relator estimates that approximately eighty percent of LHC's patients are Medicare beneficiaries." Second Am. Compl. ¶ 24. Furthermore, Relator "estimates that about 80 percent of [patients receiving EECP treatment at LHC] lacked the required diagnostic criteria to be eligible for EECP treatments under Medicare coverage guidelines. Thus, the majority of claims submitted by LHC Defendants to Medicare for EECP treatments are false claims." *Id.* ¶ 121. Relator fails to provide a factual basis to back up these allegations.

Given the deficiencies of Relator's allegations in detailing the particulars of the alleged scheme along with his failure to provide reliable indicia, the Court finds these "estimates" are not enough to lead to a strong inference that claims were actually submitted. Just because Relator concludes that "the majority of claims submitted by LHC Defendants to Medicare for EECP treatments are false claims" does not make it true. Conclusory allegations and unwarranted deductions of fact are not accepted as true. *See Ferrer*, 484 F.3d at 780.

In sum, the Court finds that Relator has failed to plead fraud with particularity as required by Rule 9(b) in the FCA context. Therefore, the Court grants Defendants' Motions to Dismiss as to Relator's remaining claims. The Court grants in part Relator's request for leave to amend.

Relator shall have until November 26, 2018, to file an amended complaint with respect to Relator's claims that have not been dismissed with prejudice. *See supra* § III.A.

## IV. CONCLUSION

For the reasons stated above, the Court grants Defendants' Motions to Dismiss [ECF Nos. 42 and 45]. The claims asserted against Defendants Michael Grad, M.D., Legacy Heart Care of South Austin, LLC, Legacy Heart Care of Phoenix, LLC, and Legacy Heart Care of Charlotte, LLC are all dismissed with prejudice. Relator is granted leave to amend as to his remaining claims. Relator must file an amended complaint on or before November 26, 2018. If an amended complaint is not filed by this date, this case will be dismissed with prejudice.

**SO ORDERED.**

SIGNED October 26, 2018.

**KAREN GREN SCHOLER
UNITED STATES DISTRICT JUDGE**