# United States District Court
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA, ex rel. EMERSON PARK | § § § | |
| v. | § § | CIVIL ACTION NO. 3:16-CV-0803-S |
| LEGACY HEART CARE, LLC, LEGACY HEART CARE OF FORT WORTH, LLC, LEGACY HEART CARE OF AUSTIN, LLC, LEGACY HEART CARE OF MIDTOWN AUSTIN, LLC, TRINITY HEART CARE, LEGACY HEART CARE OF SAN ANTONIO, LLC, LEGACY HEART CARE OF KANSAS CITY, LLC, MICHAEL GRATCH, TUAN D. NGUYEN, VU D. NGUYEN, VINH D. NGUYEN, and NIMA AMJADI | § § § § § § § § § § § § § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff-Relator Emerson Park ("Relator") brings this *qui tam* action against Defendants Legacy Heart Care, LLC ("LHC"), Legacy Heart Care of Fort Worth, LLC, Legacy Heart Care of Midtown Austin, LLC, Legacy Heart Care of Austin, LLC, Trinity Heart Care, Legacy Heart Care of San Antonio, LLC, Legacy Heart Care of Kansas City, LLC (collectively "LHC Entities"), Michael Gratch (together with LHC Entities, the "LHC Defendants"), Tuan D. Nguyen, Vu D. Nguyen, Vinh D. Nguyen, and Nima Amjadi ("Medical Director Defendants"), alleging that LHC Defendants and Medical Director Defendants defrauded the United States while providing Enhanced External Counterpulsation ("EECP") to Medicare patients.

Pending before the Court is LHC Defendants' and Medical Director Defendants' Motions to Dismiss Relator's Third Amended Complaint ("Motions to Dismiss) [ECF Nos. 100, 102], and their Joint Motion for Attorneys' Fees ("Motion for Attorneys' Fees") [ECF No. 93]. For the

reasons that follow, the Court grants in part and denies in part the Motions to Dismiss, and denies

the Motion for Attorneys' Fees at this time.

## I.     BACKGROUND

Pursuant to Special Order 3-318, this case was transferred from the docket of Judge Sam

A. Lindsay to the docket of this Court on March 8, 2018. As the present action is the subject of a

prior opinion of this Court, *see United States ex rel. Park v. Legacy Heart Care, LLC*, Civ. A. No.

3:16-CV-803-S, 2018 WL 5313884 (N.D. Tex. Oct. 26, 2018), the Court will discuss the

background facts only to the extent necessary for this Memorandum Opinion and Order.

The procedural posture of this *qui tam* action is worthy of note. Relator filed his initial

complaint under seal on March 22, 2016. *See* ECF No. 2. After over a year of investigation, the

United States decided not to intervene in this action, and the Court ordered the unsealing of the

complaint on September 19, 2017. *See* ECF Nos. 16, 17. LHC Defendants and Medical Director

Defendants filed their initial motions to dismiss the complaint on January 31, 2018, but the Court

denied these motions as moot because Relator amended his complaint. *See* ECF Nos. 31, 33, 39,

57. Thereafter, LHC Defendants and Medical Director Defendants filed a renewed set of motions

to dismiss on March 7, 2018. *See* ECF Nos. 42, 45. Although Relator amended his complaint for

a second time, the amendment served only to clarify the parties to the suit, and all parties agreed

that it did not moot the second set of motions to dismiss. *See* ECF No. 60.

On October 26, 2018, the Court granted LHC Defendants' and Medical Director

Defendants' second set of motions. *See Park*, 2018 WL 5313884, at *9. Significantly, the Court

dismissed Relator's claims against then-defendants Michael Grad, M.D., Legacy Heart Care of

South Austin, LLC, Legacy Heart Care of Phoenix, LLC, and Legacy Heart Care of Charlotte,

LLC with prejudice after finding the allegations "to be potentially a violation of FED. R. CIV. P.

11(b)(3) and an unreasonable stretch of deduction." *Id.* at *5. The Court granted Relator leave to

2

replead the remaining claims, *id.* at *9, and Relator filed his Third Amended Complaint (the "Complaint") on November 26, 2018.

On his fourth attempt to state a claim, Relator—a former scribe employed by LHC for approximately seven months—continues to claim that LHC Defendants and Medical Director Defendants "engaged in a pervasive pattern of false and fraudulent conduct with respect to its provision of EECP and related services to Medicare patients." Third Am. Compl. ¶¶ 2, 14. Specifically, Relator alleges that LHC Defendants and Medical Director Defendants presented false claims to Medicare in violation of the False Claims Act ("FCA")[1] by:

> (1) seeking reimbursement for EECP services that did not satisfy the diagnostic criteria under [National Coverage Determination ('NCD')] 20.20, (2) upcoding [Evaluation and Management ('E&M')] services to the highest level billing codes, (3) seeking reimbursement for EECP services that were not directly supervised by a physician as required by NCD 20.20, and (4) paying kickbacks to patients in the form of waived co-pays and certain expenses.

*Id.* ¶ 62. The Complaint splits these allegations between four causes of action. In Counts I and II, Relator purports to state presentment and false-statement claims by alleging that LHC Defendants and Medical Director Defendants (1) submitted Medicare claims for EECP services performed in violation of NCD 20.20, and (2) "upcoded" bills for E&M services, respectively. In Count III, Relator recasts the preceding allegations into a conspiracy claim under 31 U.S.C. § 3729(a)(1)(C). Finally, in Count IV, Relator pleads that LHC Defendants and Medical Director Defendants violated the FCA by seeking Medicare reimbursement for services while violating the Anti-Kickback Statute ("AKS"), 42 U.S.C. § 1320a-7b.

---

[1] The FCA imposes civil liability and treble damages on any person who, among other things, "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" to the United States government; or "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(A)-(B); *see also United States ex rel. King v. Solvay Pharm., Inc.*, 871 F.3d 318, 323-24 (5th Cir. 2017). Claims under § 3729(a)(1)(A) are commonly referred to as "presentment claims." *United States ex rel. Colquitt v. Abbott Labs.*, 864 F. Supp. 2d 499, 511 (N.D. Tex. 2012). Claims under § 3729(a)(1)(B) are often referred to as "false-statement claims." *Id.* The FCA also imposes civil liability on any person who "conspires to commit a violation of subparagraph [(A) or (B)]." 31 U.S.C. § 3729(a)(1)(C).

For the third time, LHC Defendants and Medical Director Defendants move to dismiss each of Relator's claims, arguing that the Complaint still fails under Federal Rules of Civil Procedure 9(b) and 12(b)(6). *See* ECF Nos. 100, 102. Additionally, LHC Defendants and Medical Director Defendants request attorneys' fees they incurred in defending against claims the Court dismissed with prejudice in its prior opinion. *See* ECF No. 93. Relator filed responses to these motions, LHC Defendants and Medical Director Defendants filed replies, and Relator filed surreplies.

## II.      LEGAL STANDARD

### A.      *The Rule 12(b)(6) Standard*

To defeat a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility does not require probability, but a plaintiff must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The court must accept well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007). However, the court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (citation omitted). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative

level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

The ultimate question is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002). At the motion to dismiss stage, the court does not evaluate the plaintiff's likelihood of success. It only determines whether the plaintiff has stated a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977).

## B. *The Rule 9(b) Standard*

Since all of Relator's claims are premised on alleged violations of the FCA, the allegations must also satisfy Rule 9(b)'s heightened pleading standard. *See United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009). Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (quoting *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992)). Put simply, Rule 9(b) requires the "who, what, when, where, and how" of the fraud. *United States ex rel. Williams v. Bell Helicopter Textron Inc.*, 417 F.3d 450, 453 (5th Cir. 2005) (quoting *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)).

The Fifth Circuit has given Rule 9(b) a "flexible" interpretation in the FCA context in order to achieve the FCA's remedial purpose. *See Grubbs*, 565 F.3d at 190. A complaint can survive a motion to dismiss by alleging "the details of an actually submitted false claim" or by "alleging particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong

inference that the claims were actually submitted." *Id.* However, this "flexible" interpretation does not absolve *qui tam* relators of the heightened pleading requirements of Rule 9(b). *See United States ex rel. Nunnally v. W. Calcasieu Cameron Hosp.*, 519 F. App'x 890, 893 (5th Cir. 2013). A relator must still allege the "'who, what, when, where, and how' of the alleged fraud." *United States ex rel. Jamison v. Del-Jen, Inc.*, 747 F. App'x 216, 219 (5th Cir. 2018) (quoting *United States ex rel. Shupe v. Cisco Sys., Inc.*, 759 F.3d 379, 382 (5th Cir. 2014) (per curiam)).

## III. ANALYSIS

### A. *Lack of Allegations as to Certain Defendants*

Although the Court previously dismissed claims against certain defendants for failure to allege any specific, non-speculative fraudulent or illegal conduct attributable to them, *see Park*, 2018 WL 5313884, at *5, Relator continues to disregard his obligation to "plead[] factual content that allows the [C]ourt to draw the reasonable inference that . . . [each Defendant is] liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This obligation is particularly acute here because Relator purports to bring a claim under the FCA. "As a counterweight to the [FCA's] power and as a shield against fishing expeditions, FCA suits are subject to the screening function of Federal Rule of Civil Procedure 9(b)." *United States ex rel. Gage v. Davis S.R. Aviation, L.L.C.*, 623 F. App'x 622, 623 (5th Cir. 2015). The requirements of Rule 9(b) "must be met for *each* defendant." *United States ex rel. Capshaw v. White*, Civ. A. No. 3:12-CV-4457-N, 2018 WL 6068806, at *3 (N.D. Tex. Nov. 20, 2018). The Court finds that Relator's allegations against Michael Gratch, Vu D. Nguyen, Trinity Heart Care, LHC of San Antonio, LLC, and LHC of Kansas City, LLC are so deficient that they may, again, rise to the level of a Federal Rule of Civil Procedure 11(b) violation. At a minimum, Relator did not plead sufficient facts to satisfy the heightened pleading standard of Rule 9(b) as to these Defendants.

Each of these Defendants hardly appears outside of the caption of the Complaint. Michael Gratch is mentioned in only one paragraph, where he is identified as "the founder, president, and owner of LHC" and alleged to be the individual "responsible or LHC's fraudulent operations," without a single fact supporting this sweeping accusation. Third Am. Compl. ¶ 21. Vu D. Nguyen is mentioned three times—Relator identified him as a cardiologist, as one of LHC's medical directors, and as a doctor who referred a patient to LHC. *See id.* ¶¶ 23, 26, 120. In 72 pages of the Third Amended Complaint, Relator did not offer one factual allegation specifically linking Michael Gratch or Vu D. Nguyen to the alleged fraudulent scheme aside from their employment at LHC. Instead, Relator continues to rely on generalized accusations—e.g., "Defendants collectively engaged in a multi-faceted scheme that resulted in the presentment of false claims to Medicare in violation of the FCA." *Id.* ¶ 62. Does Relator not understand that he may not simply lump Defendants together? *See Park*, 2018 WL 5313884, at *10 (citation omitted). Such general allegations do not establish "more than a sheer possibility that [Michael Gratch or Vu. D. Nguyen] has acted unlawfully." *Iqbal*, 556 U.S. at 678.

In his fourth attempt, Relator's allegations regarding some of the LHC entities are just as egregiously deficient. LHCs of San Antonio and Kansas City are mentioned twice each, without any detail as to their specific involvement. *See id* ¶ 18 (listing their addresses); *id.* ¶ 292 ("[LHC of] San Antonio and Kansas City had approximately 20 patient [sic] per-day."). Trinity Heart Care is referenced three times.[2] *See id.* ¶ 18 (listing its address); *id.* ¶ 71 (stating amount Medicare reimburses it for EECP services); *id.* ¶ 72 ("[LHC of] Dallas . . . had approximately 20 patient [sic] per day."). And, Relator's allegations against these LHC Entities are not saved by his claim that

---

[2] For the purposes of this Memorandum Opinion and Order, the Court attributes each allegation concerning a clinic in Dallas to Trinity Heart Care, because Relator claims that "Trinity Heart Care [is] also known as Legacy Heart Care of Dallas, LLC." Third Am. Compl. ¶ 18.

LHC Entities have "centralized billing" or "standardized policy." *E.g.*, *id.* ¶¶ 141, 147. Even if Trinity Heart Care, LHC of San Antonio, and LHC of Kansas City had a policy of "inputting the specific angina code in all patient charts," the Court cannot simply accept Relator's speculations that these LHC Entities submitted claims for EECP treatment that did not satisfy NCD 20.20 criteria, billed for services not provided, or paid kickbacks to patients.[3] Without factual support, Relator's claims against these LHC entities appear to be no more than "nuisance suits and . . . baseless claims" that are used "as a pretext to gain access to a 'fishing expedition,'" and that are prohibited by Rule 9(b). *Grubbs*, 565 F.3d at 191.

Furthermore, the Court finds that Relator pleaded insufficient facts to show that Michael Gratch, Vu D. Nguyen, Trinity Heart Care, or LHC Entities of San Antonio and Kansas City entered into "an unlawful agreement . . . to get a false or fraudulent claim allowed or paid by [the Government]" or "at least one act performed in furtherance of that agreement." *Grubbs*, 565 F.3d at 193 (first alteration added) (quoting *United States ex rel. Farmer v. City of Houston*, 523 F.3d 333, 343 (5th Cir. 2008)) (reciting the elements of FCA conspiracy claim). There are no facts suggesting that any of these Defendants may be held liable as co-conspirators.

Relator was put on notice of these wholly inappropriate pleading deficiencies by the Court's prior opinion. The Court dismissed claims against then-Defendant Michael Grad, M.D., for substantially the same reason and warned Relator that such pleading tactics may violate Federal Rule of Civil Procedure 11(b). *See Park*, 2018 WL 5313884, at *5. Nonetheless, the Court did not dismiss the claims against Michael Gratch, Vu D. Nguyen, Trinity Heart Care, LHC of San Antonio, and LHC of Kansas City to afford Relator an opportunity to plead facts as to each of

---

[3] At a minimum, Relator's claims against Michael Gratch, Vu D. Nguyen, Trinity Heart Care, LHC of San Antonio, and LHC of Kansas City fail because there "is no indication that [these Defendants] acted with the requisite intent." *Grubbs*, 565 F.3d at 192.

these Defendants. *Id.* at *6. The Court will no longer tolerate Relator's scattershot pleading tactics. The Court finds that Relator "has had fair opportunity to make his case," *Schiller v. Physicians Res. Grp., Inc.*, 342 F.3d 563, 567 (5th Cir. 2003) (quoting *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986)), and that further amendment would be futile. *See Rombough v. Bailey*, 733 F. App'x 160, 165 (5th Cir. 2018). Consequently, the Court grants the Motions to Dismiss as to every Count alleged against Michael Gratch, Vu D. Nguyen, Trinity Heart Care, LHC of San Antonio, and LHC of Kansas City with prejudice.[4]

## B.  *Theories of False Claims Liability*

For a defendant to be liable under the FCA, the relator must establish that "(1) . . . there was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due (i.e., that involved a claim)." *United States ex rel. Lemon v. Nurses to Go, Inc.*, 924 F.3d 155, 159 (5th Cir. 2019) (quoting *United States ex rel. Harman v. Trinity Indus. Inc.*, 872 F.3d 645, 654 (5th Cir. 2017)). A claim under 31 U.S.C. § 3729(a)(1)(A) arises when a person "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." "[T]he provision's *sine qua non* is the presentment of a false claim." *Grubbs*, 565 F.3d at 188. The FCA "attaches liability, not to the underlying fraudulent activity . . . but to the claim for payment."[5] *United States ex rel. Longhi v. United States*, 575 F.3d 458, 467 (5th Cir. 2009) (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 785 (4th Cir. 1999)). A

---

[4] Hereafter, the Court refers to the other Defendants collectively as "Remaining Defendants," and the remaining Medical Director Defendants as "Remaining Medical Director Defendants."

[5] LHC Defendants assert that the Third Amended Complaint should be dismissed because it "contains no factual allegation indicating that a single false claim was reimbursed by Medicare." LHC Defs.' Br. in Supp. Mot. to Dismiss ("LHC Defs.' Br.") 14. The Fifth Circuit, however, clearly instructed that "a claim under § 3279(a)(1) does not require actual or specific damages," *Grubbs*, 565 F.3d at 188, and that a relator can still plead a cause of action under the FCA even "if the Government has not paid money on the false claim." *United States v. Ridglea State Bank*, 357 F.2d 495, 497 (5th Cir. 1966).

claim under § 3729(a)(1)(B) similarly requires a relator to "show that the claim presented for payment . . . was false," *United States ex rel. Rigsby v. State Farm Fire & Cas. Co.*, 794 F.3d 457, 476-77 (5th Cir. 2015), *aff'd*, 137 S. Ct. 436 (2016), but also requires that the defendant made, used, or caused to be made or used, "a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(B).

In this case, Relator alleged that Remaining Defendants are liable under §§ 3729(a)(1)(A) and (B) because they purportedly: (1) billed Medicare for EECP treatments not allowed by NCD 20.20—Count I; (2) billed Medicare for E&M services using incorrect billing codes—Count II; and (3) falsely certified compliance with the AKS—Count IV. For the reasons that follow, the Court denies the Motions to Dismiss as to Count I, but grants the motions as to Counts II and IV.

### (1)    *NCD 20.20*

Relator alleged in Count I that Remaining Defendants submitted false claims to Medicare by billing for "EECP services that did not satisfy the diagnostic criteria under NCD 20.20" and that "were not directly supervised by a physician." *See* Third Am. Compl. ¶ 62. It is well-established Supreme Court and Fifth Circuit law that "defendants could be liable under the FCA for violating statutory or regulatory requirements, whether or not those requirements were designated in the statute or regulation as conditions of payment." *Lemon*, 924 F.3d at 159-60; *see also Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 1999-2001 (2016). To be found "liable under th[is] implied false certification theory," however, Remaining Defendants must have made "specific representations about the goods or services provided" and "fail[ed] to disclos[e] noncompliance with material, statutory, regulatory, or contractual requirements [that] make[] those representations misleading half-truths." *United States ex rel. Smith v. Wallace*, 723 F. App'x 254, 255 (5th Cir. 2018) (quoting *Escobar*, 136 S. Ct. at 2001). In

10

this case, viewing the Complaint in the light most favorable to Relator, the Court finds that Relator sufficiently pleaded facts on each element of Count I.

### a. *Specific Representation*

To state an implied false certification claim under the FCA, the Relator must show that a defendant made "specific representations about the good or services provided," *id.*, by identifying the allegedly false or misleading representation. *See Escobar*, 136 S. Ct. at 2000 (finding the requirement met where defendant "represented that it had provided individual therapy . . . and other types of treatment" without "disclosing . . . many violations of basic staff and licensing requirements"). In this case, Relator alleged that Remaining Defendants "expressly certifie[d] that the services performed were medically justified and the claim [for payment] otherwise complie[d] with applicable rules and regulations." Third Am. Compl. ¶ 34. Relator further alleged that Remaining Defendants submitted claims to Medicare using Form 1500, expressly certifying that each claim "complies with all applicable Medicare and/or Medicaid laws, regulations, and program instructions for payment" and that "the services [rendered] were medically necessary." *Id.* ¶¶ 35, 44 (emphases omitted). The Court finds that these allegations sufficiently identify the representations that Relator contends were false or misleading.

### b. *Details of the Scheme*

Under Rule 9(b), a *qui tam* complaint must "include 'the time, place[,] and contents of the false representation[ ], as well as the identity of the person making the misrepresentation and what that person obtained thereby.'" *Grubbs*, 565 F.3d at 188 (first alteration added) (quoting *United States ex rel. Russell v. Epic Healthcare Mgmt. Grp.*, 193 F.3d 304, 308 (5th Cir. 1999)). If the relator "cannot allege the details of an actually submitted false claim," the relator must "alleg[e] particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Id.* at 190.

Here, the Court finds that Relator did not plead the contents of any Medicare claim that expressly or implicitly certified compliance with NCD 20.20 when that was not the case. Although Relator provided detail regarding multiple Medicare patients that received EECP treatment despite allegedly not qualifying for it, Relator pleaded no more than that "[p]ursuant to its regular business practices and upon information and belief, LHC's billing department billed Medicare for the EECP treatments and related services given to" these Medicare patients. *See* Third Am. Compl. ¶¶ 116-20, 127, 129-32, 138. Nowhere in the Complaint did Relator allege to have seen or heard of a particular claim being submitted to Medicare; and for good reason, as Relator's responsibility "for filling-out patient medical records" afforded him the opportunity to see only a part, rather than the whole, of the alleged fraudulent scheme. *Id.* ¶ 90. Thus, the Court finds that Relator did not satisfy the Rule 9(b) standard by pleading the content of any specific false claim.

Nonetheless, the Court finds that Relator pleaded sufficient detail, with reliable indicia, that leads to a strong inference that false claims may have actually been submitted. *See Grubbs*, 565 F.3d at 190. Relator identified: (1) four Medicare patients who received EECP treatment with Tuan D. Nguyen or Nima Amjadi's approval, despite having Class I or II angina, *see* Third Am. Compl. ¶¶ 116, 118-20; (2) five patients who had received heart surgery shortly prior to their EECP treatment from Tuan D. Nguyen or Vinh D. Nguyen, *id.* ¶¶ 127, 129-32; and (3) one patient treated by Tuan D. Nguyen who had congestive heart failure, rather than angina, *see id.* ¶ 138.[6] EECP treatment for these patients would likely not be covered by Medicare because "the use of [EECP] to treat conditions other than stable angina pectoris is not covered," and because coverage is only available for:

---

[6] Relator also alleged that Remaining Defendants "alter[ed] patient records" by "add[ing] missing diagnoses and symptoms" and recorded symptoms prior to medical intervention, thereby omitting a patient's present symptoms. *See* Third Am. Compl. ¶¶ 5, 128-30. These allegations are sufficient to show that Remaining Defendants may have created "a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(B).

> Patients who have been diagnosed with disabling angina (Class III or Class IV . . .) who . . . are not amenable to surgical intervention . . . because: 1. Their condition is inoperable, or at high risk of operative complications or post-operative failure; 2. Their coronary anatomy is not readily amenable to such procedures; or 3. They have co-morbid states that create excessive risk.

MEDICARE NATIONAL COVERAGE DETERMINATION MANUAL § 20.20(A)-(B) (2019) [hereinafter, "NCD MANUAL"]. Additionally, Relator alleged that "no physician was present at the clinic" when LHC of Austin[7] provided EECP treatment, *see* Third Am. Compl. ¶¶ 225-28, even though Medicare regulations require EECP treatment to "be done under direct supervision of a physician." NCD MANUAL, *supra*, § 20.20(B). Moreover, Relator alleged that Remaining Defendants would need to certify that the EECP treatment of these patients was medically justified and was performed consistent with Medicare laws, regulations, and program instructions, to submit a claim to Medicare. *See* Third Am. Compl. ¶¶ 30, 34, 44. Thus, the Court finds that Relator pleaded sufficient facts to show that Remaining Defendants could have submitted a claim that falsely certified compliance with Medicare laws and regulations. The only remaining issue is whether Remaining Defendants actually submitted such a claim.

At this stage of the litigation, the Court finds that Relator pleaded sufficient facts to create reliable indicia that Remaining Defendants may have submitted a false claim to Medicare. First, Relator alleged that the head of LHC's billing department reprimanded Relator for "correctly assess[ing] the patient as not being classified for angina and . . . not automatically apply[ing] the angina billing code." *Id.* ¶ 169. Relator specifically alleged that he was told "that his failure to apply the necessary angina billing code cost LHC thousands of dollars," and that "medical staff need[ed] to 'bend' the descriptions and the codes in order to satisfy the Medicare requirement."

---

[7] "LHC of Austin" refers to both, Legacy Heart Care of Austin, LLC, and Legacy Heart Care of Midtown Austin, LLC, because Relator alleges that Legacy Heart Care of Austin was renamed to Legacy Heart Care of Midtown Austin after LHC opened a clinic in South Austin. *See* Third Am. Compl. ¶ 18.

*Id.* ¶¶ 170, 171; *see also United States ex rel. Ramsey-Ledesma v. Censeo Health, L.L.C.*, Civ. A. No. 3:14-CV-00118-M, 2016 WL 5661644, at *5 (N.D. Tex. Sept. 30, 2016) (finding reliable indicia where relator witnessed "quality control team pressure physicians to make unsupported diagnoses"). Second, Relator alleged in detail how LHC of Austin, Tuan D. Nguyen, Vinh D. Nguyen, and Nima Amjadi treated ten Medicare patients even though these treatments did not qualify for Medicare coverage under NCD 20.20. *See id.* ¶¶ 116, 118-20, 127, 129-32, 138. Third, Relator pleaded that the vast majority of LHC's patients are Medicare beneficiaries, *see id.* ¶ 152, that Relator reviewed patient medical records and found that the alleged "misconduct extends all the way back [to] . . . 2012," *id.* ¶ 166, and that Tuan D. Nguyen, Vinh D. Nguyen, and Nima Amjadi submitted 6,727 claims to Medicare for EECP services between 2012 and 2015, *see id.* ¶ 160. Assuming that all of these factual allegations are true, which the Court must do for the purposes of the Motions to Dismiss, "the logical conclusion of the[se] particular allegations" is "[t]hat fraudulent bills were presented to the Government." *Grubbs*, 565 F.3d at 192. Accordingly, the Court finds that Relator provided reliable indicia of a fraudulent scheme to bill Medicare for EECP services that were not covered under NCD 20.20.

### c. *Materiality*

Under the FCA, "the term 'material' means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4); *Longhi*, 575 F.3d at 468 (citing *Neder v. United States*, 527 U.S. 1, 16 (1999)). "The materiality test under the FCA is demanding." *Lemon*, 924 F.3d at 161 (citations omitted). "No one factor is dispositive, and [the Court's] analysis is holistic." *Id.* (citing *Escobar*, 139 S. Ct. at 2003). In cases where the relator alleges that a claim is false because of the defendant's noncompliance with a statutory, regulatory, or contract provision, the Court must determine whether: (1) "the alleged violations are conditions of payment"; (2) "the Government would deny Defendants

14

reimbursement payments if it had known of these alleged violations"; and (3) "the 'noncompliance is minor or insubstantial.'" *Id.* at 161-63 (first citing *Harman*, 872 F.3d at 663; and then quoting *Escobar*, 136 S. Ct. at 2003)).

### i.  Condition of Payment

The Medicare Act states that "no payment may be made . . . for any expenses incurred for items or services" that "are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member." 42 U.S.C. § 1395y(a)(1)(A). "The Secretary of Health and Human Services decides 'whether a particular medical service is "reasonable and necessary" . . . by promulgating a generally applicable rule or by allowing individual adjudication.'" *United States ex rel. Polukoff v. St. Mark's Hosp.*, 895 F.3d 730, 735 (10th Cir. 2018) (alteration in original) (emphasis omitted) (quoting *Heckler v. Ringer*, 466 U.S. 602, 617 (1984)). "[C]laims for medically unnecessary treatment are actionable under the FCA." *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).

Typically, the Centers for Medicare and Medicaid Services issue an NCD, which determines the scope of coverage for a particular service. *See United States ex rel. Colquitt v. Abbott Labs.*, No. 3:06-CV-1769-M, 2016 WL 80000, at *3 (N.D. Tex. Jan. 7, 2016); *see also* 42 U.S.C. § 1395ff(f)(1)(B) ("[T]he term ['NCD'] means a determination by the Secretary with respect to whether or not a particular item or service is covered nationally under this subchapter . . . ."); 42 C.F.R. § 405.1060(a)(1) ("An NCD is a determination by the Secretary of whether a particular item or service is covered nationally under Medicare."). An NCD is binding on all private Medicare contractors. *See* 42 C.F.R. § 405.1060(a)(4), (b)(1).

In this case, Relator alleged that LHC Entities billed Medicare for EECP treatment of patients who did not satisfy the criteria of NCD 20.20 and treatment done without the direct

15

supervision of a physician. *See* Third Am. Compl. ¶¶ 63-65, 88, 111, 219. For example, Relator pleaded facts showing Remaining Defendants billed Medicare for EECP treatment of patients who "did not have disabling angina as evidenced even by LHC's own internal records," "denied having angina," or had "a Class II for angina severity." *Id.* ¶¶ 117, 118, 119, 120. Relator also described in detail how some patients received EECP treatment despite receiving cardiac bypass surgery, or having been diagnosed with congestive heart failure. *See, e.g.*, *id.* ¶¶ 131, 134, 138. However, NCD 20.20 provides Medicare coverage only for EECP treatment for "patients who have been diagnosed with disabling angina (Class III or Class IV . . . ) who . . . are not readily amenable to surgical intervention, such as . . . cardiac bypass." NCD MANUAL, *supra*, § 20.20(B). Moreover, NCD 20.20 requires the presence of a supervising physician and specifically disclaims coverage for "use of [EECP] to treat cardiac conditions other than stable angina pectoris." *Id.* Viewing the Complaint in the light most favorable to Relator, the Court finds that Relator sufficiently pleaded that Defendants may have violated an express condition for receiving Medicare payment.

### ii. Government Enforcement

The fact that Relator alleges that Defendants violated an express condition is not dispositive on the issue of materiality. Rather, the Court must consider the Government's decision to condition a payment on a specific requirement along with other evidence—such as evidence that "the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated," *Escobar*, 136 S. Ct. at 2003—in determining whether a condition is material. *See Lemon*, 924 F.3d at 160 (quoting *Escobar*, 139 S. Ct. at 2003). Here, the Complaint states that the Government recoups payment for procedures performed in violation of the NCD, *see* Third Am. Compl. ¶ 87, but also states that the Government "continues to pay claims that would not be paid but for Defendants' misconduct." *Id.* ¶¶ 298, 302, 308. Thus, Relator's allegations regarding the Government's past response to noncompliance with NCD 20.20 suggest

neither that the violation is material nor that is immaterial. Nonetheless, this deficiency does not result in dismissal of this claim. *See Lemon*, 924 F.3d at 162 ("[The Court does] not expect Relators to know precisely the Government's prosecutorial practices without the benefit of discovery."). Given that Relator sufficiently pleaded that Defendants may have violated NCD 20.20's specific requirements, the Court finds that the Government may deny payment were it aware of the noncompliance.

### iii. *Substantial or Minor*

"A violation is material if a reasonable person 'would attach importance to [it] in determining his choice of action in the transaction' or 'if the defendant knew or had reason to know that the recipient of the representation attaches importance to the specific matter "in determining his choice of action," even though a reasonable person would not.'" *Lemon*, 924 F.3d at 163 (alteration in original) (quoting *Escobar*, 136 S. Ct. at 2002-03). "Since [the Court] determine[d] that the allegations are sufficient to establish that the Government would deny payment here, [the Court] also conclude[s] that the Government would 'attach importance' to the underlying violations." *Id.* "Defendants cannot provide and charge for services without certifying that the patients are first eligible for those services under the terms of eligibility established by Congress and Medicare, which limit [EECP] services to a distinct class of patients." *Id.* Viewing the Complaint in the light most favorable to Relator, the Court finds that the alleged violations are not minor.

### d. *Scienter*

"To meet the 'requisite scienter' requirement, the [relator] must plead that [the defendant] acted with knowledge of the falsity of the statement, which is defined, at a minimum, as acting 'in reckless disregard of the truth or falsity of the information.'" *United States v. Bollinger Shipyards, Inc.*, 775 F.3d 255, 259-60 (5th Cir. 2014) (quoting 31 U.S.C. § 3729(b)(1)(A)(iii)). A relator does

not need to plead the knowledge element with particularity, nor does he need to show that the defendant was aware of the truth. *See id.* at 260-61. "The FCA is satisfied if the [relator] alleges the defendant either knew that [its statement] was false or acted with reckless disregard of its truth or falsity." *Id.* at 261. Nonetheless, the allegations must be sufficient to move the needle from "innocent mistakes or negligence" to affirmative fraud. *See United States v. Southland Mgmt. Corp.*, 326 F.3d 669, 681 (5th Cir. 2003).

Here, Relator pleaded sufficient facts to show that Remaining Defendants may have been acting in reckless disregard of whether their Medicare claims accurately certified compliance with Medicare laws and regulations. LHC, the corporate entity that owns the other LHC clinics, allegedly maintains a centralized billing department for all of the other LHC Entities. *See* Third Am. Compl. ¶ 141. Relator alleged that the head of this billing department "stressed that a classification 'II-III' was the lowest angina classification that could be used" for "LHC . . . [to] get paid . . . by Medicare." *Id.* ¶ 147. The same individual later reprimanded Relator for not classifying a patient for disabling angina, even though the patients' medical records allegedly "did not support a finding of angina." *Id.* ¶ 169. Moreover, LHC purportedly used "an 'auto-filling' electronic system, which automatically fill[ed] in the required patient diagnosis and billing codes in order to meet Medicare coverage requirements." *Id.* ¶ 149. Viewing the Complaint in the light most favorable to Relator, the Court finds these allegations sufficient to show that LHC may have acted in reckless disregard as to whether the claims it submitted actually complied with Medicare laws and regulations.

The Court further finds that Relator alleged sufficient facts to raise the plausible inference that LHC of Austin and Remaining Medical Director Defendants may have acted with reckless disregard as to their compliance with Medicare laws and regulations. Relator alleged, for example,

that these Defendants treated Medicare patients who had Class II angina, had recent heart surgery, or had congestive heart failure instead of angina. *See id.* ¶¶ 116-120, 127, 129-32, 138. LHC of Austin purportedly listed billing codes on these patients' charts that are used to bill Medicare. *See id.* ¶¶ 36-38, 69, 117-20, 129-32. Remaining Medical Director Defendants allegedly "rarely reviewed the patient charts before signing them," and Relator allegedly witnessed Tuan D. Nguyen "bulk sign more than 50 patient charts at a time" without carefully reviewing any of them. *Id.* ¶¶ 107-08. Moreover, Relator stated that he witnessed LHC of Austin provide EECP treatment without a physician present, *see id.* ¶¶ 224-30, even though Medicare only covers the procedure when "done under direct supervision of a physician." NCD MANUAL, *supra*, § 20.20(B). These allegations suffice to create the plausible inference that LHC of Austin and Remaining Medical Director Defendants may have acted with reckless disregard as to their compliance with Medicare laws and regulations. Accordingly, the Court denies the Motions to Dismiss as to Count I.

### (2)     *Evaluation and Management Services*

In Count II, Relator alleged that Remaining Defendants are liable under the FCA for "upcoding [E&M] services to the highest level billing codes"—i.e., charging Medicare for unnecessary services or services that were never actually provided. *See* Third Am. Compl. ¶¶ 62, 184. A defendant charging the Government for services not actually provided is a staple FCA violation. *See Grubbs*, 565 F.3d at 192 (fraudulent scheme involved charging for "face-to-face physician visits that had not occurred"); *see also United States v. McNinch*, 356 U.S. 595, 599 (1958) ("The [FCA] was originally adopted following a series of sensation congressional investigations . . . [that] painted a sordid picture of how the United States had been billed for nonexistent or worthless goods, charged exorbitant prices for goods delivered, and generally robbed in purchasing the necessities of war."). Relator is not excused, however, from pleading sufficient facts showing that "(1) . . . there was a false statement or fraudulent course of conduct;

19

(2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due (i.e., that involved a claim)." *Lemon*, 924 F.3d at 159 (quoting *Harman*, 872 F.3d at 654). For the reasons explained below, the Court grants the Motions to Dismiss as to Count II.

### a.   *Details of the Scheme*

The Court finds that Relator did not plead sufficient detail "of an actually submitted false claim," or "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Grubbs*, 565 F.3d at 190. Relator never identified a single claim submitted to Medicare that was billed at a higher rate than appropriate, let alone who submitted it, when, or where.[8] Nor did Relator provide reliable indicia that Remaining Defendants billed Medicare for an E&M service at an incorrect rate. Rather, Relator alleged merely that to bill at Remaining Defendants' level, "a physician is required to engage in high complexity medical decision-making," whereas Remaining Medical Director Defendants "spent close to zero time engaged in medical decision making" or met so many patients at a time that it is "mathematically impossible for" them "to have actually provided [their] patients with the highest levels of E/M office visits." Third Am. Compl. ¶¶ 198, 199, 200, 203-08, 210; *see also* Resp. in Opp. to Defs.' Mot. to Dismiss 15.

Relator's allegations require the Court to presume, however, that Remaining Medical Director Defendants spent no time reviewing medical documents or engaging in "high complexity medical decision-making" before or after a patient's visit. *See* DEP'T OF HEALTH & HUMAN

---

[8] The Court notes that Relator claims that two office visits were "billed under CPT 99205, one of the highest-level office visits with regards to time spent with patients." Third Am. Compl. ¶¶ 207-08. The Court presumes, however, that Relator is referring to billing codes used in AdvancedMD, as Relator was not involved in submitting claims to Medicare. *See id.* ¶¶ 145, 209; Surreply in Opp. to Defs.' Mot. to Dismiss 4. Regardless, these allegations are unsupported and do not rise above mere speculations. *See Gage*, 623 F. App'x at 625 (quoting *United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 266 (5th Cir. 2010)).

SERVS., CTRS. FOR MEDICARE & MEDICAID SERVS., EVALUATION AND MANAGEMENT SERVICES 18 (2017) [hereinafter, "E&M SERVICES MANUAL"] (noting that American Medical Association documents "list average time guidelines for a variety of E/M services," but that "[t]hese times include work done before, during, and after the encounter"). Although the Court views the Complaint in the light most favorable to Relator, it cannot make such "unwarranted factual inferences." *Ferrer*, 484 F.3d at 780 (citation omitted) (internal quotation marks omitted). In fact, this factual inference is inconsistent with Relator's other allegations. The Complaint states that patients had "interview[s] with . . . nurse practitioner[s]," that "a patient's charts were already fully filled in for Medical Director Defendants," and that Relator, a medical scribe, "worked with all of the Medicare patients" and "complet[ed] their medical records." Third Am. Compl. ¶¶ 112, 169, 206. By Relator's own admission, patients had significant interaction with nurse practitioners and other LHC staff, and Medicare allows for a physician to bill for an E&M service using his own National Provider Identifier for "split/shared . . . encounter[s] where a physician and a [non-physician practitioner] each personally perform a portion of an [E&M] visit." E&M SERVICES MANUAL, *supra*, at 18.

Additionally, the Court finds that Relator provided "no indicia of any actual knowledge of any FCA-violating fraud" related to the provision of E&M services. *Nunnally*, 519 F. App'x at 893. Relator did not allege in his Third Amended Complaint that any Defendant or medical director described to him a scheme to defraud Medicare or recruited him to participate in such a scheme. Rather, Relator speculates that Remaining Defendants engaged in widespread, years-long fraud based on his lay opinion that these medical professionals did not spend enough face-to-face time with their patients. These allegations do not rise above mere speculation, *see Gage*, 623

21

F. App'x at 625 (quoting *Steury*, 625 F.3d at 266), and are insufficient to create a "strong inference that [false] claims were actually submitted." *Grubbs*, 565 F.3d at 190.

Thus, the Court finds that Relator did not plead sufficient detail of actually submitted false claims, or particular details of a scheme to submit false claims, paired with reliable indicia that lead to a strong inference that claims were actually submitted. This deficiency is fatal to Relator's presentment and false-statement claims under §§ 3729(a)(1)(A) and (B). *See Rigsby*, 794 F.3d at 476-77. Accordingly, the Court grants the Motions to Dismiss as to Count II.

### b. *Materiality*

Even if the Court found that Relator pleaded with particularity the details of a fraudulent scheme to bill the United States at higher rates, the Court would still grant the Motions to Dismiss as to Count II because Relator pleaded insufficient facts to show that the alleged billing misconduct was material. As noted above, "[t]he materiality test under the FCA is demanding," the Court's "analysis is holistic," and Relator must allege that the alleged fraud has "a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4); *Lemon*, 924 F.3d at 161 (citations omitted); *Longhi*, 575 F.3d at 468 (citation omitted).

Here, Relator contends that Medicare would not pay for a "high level" E&M service solely because "Medicare Director Defendants[] spen[t] close to zero time performing a comprehensive history" review or "comprehensive physical examination" and spent no "more than five to ten minutes with a patient." *See* Third Am. Compl. ¶¶ 196, 200, 203 (emphasis omitted). As noted above, however, Medicare would still pay for a high level E&M service performed in part by a non-physician practitioner and for work "done before, during, and after the encounter justified it." E&M SERVICES MANUAL, *supra*, at 18. Additionally, Relator did not allege any facts showing that the Government denies or recoups payment for E&M services under similar circumstances. Thus,

Relator did not plead sufficient facts to show either that "the alleged violations are conditions of payment" or that "Government would deny Defendants reimbursement payments if it had known of these alleged violations." *Lemon*, 924 F.3d at 161-63 (citing *Harman*, 872 F.3d at 663). The Court also finds that there are insufficient facts to conclude that the Government would "attach importance" to the length of time a physician spent with a patient in paying for E&M services. *See id.* at 163 (quoting *Escobar*, 136 S. Ct. at 2002-03).

Thus, even if the Court found that Relator adequately pleaded the details of a scheme to defraud the United States by "upcoding" E&M services, the Court would grant the Motions to Dismiss as to Count II because Relator did not plead sufficient facts to show that the alleged violation is material, or that Remaining Defendants made any false records material to a Medicare claim.

### (3)    *Anti-Kickback Statute*

Relator's final theory of FCA liability, styled as Count IV, charges Remaining Defendants with billing Medicare while falsely certifying compliance with the AKS. *See* Third Am. Compl. ¶ 313. The AKS prohibits the knowing or willful paying or offering to pay any remuneration to induce: (1) the referral of an individual for items or services that may be paid for by a federal health program; or (2) the purchasing, leasing, ordering, or arranging for purchasing, leasing, or ordering any item or service that may be paid for by a federal health care program. *See* 42 U.S.C. § 1320a-7b(b)(2)(1)-(2); *Nunnally*, 519 F. App'x at 893. False-certification of compliance with the AKS can result in FCA liability. *See United States ex rel. Colquitt v. Abbott Labs.*, 858 F.3d 365, 371 (5th Cir. 2017) (citing *Thompson*, 125 F.3d at 902); *Nunnally*, 519 F. App'x at 893. "To show an AKS violation, a relator must present evidence that a defendant: (1) knowingly and willfully (2) solicited or received, or offered or paid remuneration (3) in return for, or to induce, referral or program-related business." *United States v. Vista Hospice Care, Inc.*, No. 3:07-CV-

00604-M, 2016 WL 3449833, at *21 (N.D. Tex. June 20, 2016) (citing 42 U.S.C. § 1320a-7b(1)-(2)). Even if a relator establishes all of the elements of an AKS violation, the relator must also establish "all of the other elements of an FCA claim." *Id.* (citing, among other things, *Nunnally*, 519 F. App'x at 894-95).

Here, Relator alleged that Remaining Defendants falsely certified compliance with the AKS because they were actually waiving co-insurance payment requirements for patients, or were providing transportation expenses to Medicare patients in violation of the AKS. *See* Third Am. Compl. ¶¶ 240-71. Waiver of a co-pay or payment of transportation expenses can amount to an AKS violation. *See* 42 U.S.C. § 1320a-7a(h)(i)(6) ("The term 'remuneration' includes the waiver of coinsurance and deductible amounts (or any part thereof), and transfers of items or services for free or for other than fair market value."); *id.* § 1320a-7b(b)(2) (prohibiting providers from "offer[ing] or pay[ing] any remuneration . . . in cash or in kind . . . ."); *United States ex rel. Riedel v. Bos. Heart Diagnostics Corp.*, 332 F. Supp. 3d 48, 67 (D.D.C. 2018) (finding that relator stated FCA claim based on alleged co-pay waiver). Nonetheless, the Court finds that Relator did not sufficiently plead that Remaining Defendants acted knowingly and willfully, or that the waivers induced—or even were intended to induce—program-related business.

For a defendant to act "knowingly and willfully" under the AKS, the defendant must have acted "voluntarily[,] intentionally, . . . and purposely with the specific intent to do something the law forbids; that is to say, with bad purpose either to disobey or disregard the law." *United States v. David*, 132 F.3d 1092, 1094 (5th Cir. 1998) (citation omitted). Here, although Relator alleged in significant detail how Remaining Defendants paid patients' transportation expenses and did not collect co-pays from patients, *see* Third Am. Compl. ¶¶ 248, 250, 251-57, 259-64, 267-68, Relator did not allege any facts showing that Remaining Defendants acted with the specific intent to do

something unlawful. Rather, the Complaint includes some allegations that suggest that Remaining Defendants did not intentionally act unlawfully. For instance, one of Remaining Defendants' agents, who "played an important role in deciding whether to give out the gas card[s] to . . . patients," allegedly "told Relator and other LHC employees to be prudent with the gift cards." *Id.* ¶ 265. Nonetheless, "*patients* [were] abusing th[e] gift card incentive." *Id.* ¶ 266 (emphasis added). Similarly, the Complaint states that "LHC had a practice of sending two or three bills" to patients regarding the co-pays, while other LHC employees allegedly told patients to disregard the bills.[9] *Id.* ¶¶ 249, 251, 254, 259. These allegations may show that Remaining Defendants have inconsistent business practices, but are insufficient to show that they purposely acted unlawfully. In other words, Relator established no "more than a sheer possibility that [Remaining Defendants have] acted unlawfully." *Iqbal*, 556 U.S. at 678.

Even if Relator had adequately pleaded scienter, Relator did not plead sufficient facts to show that the co-pay waivers or payment of transportation expenses induced patients to obtain treatment from Remaining Defendants. *See Nunnally*, 519 F. App'x at 894 ("[A]ctual inducement is an element of the AKS violation." (citing 42 U.S.C. § 1320a-7b(b)(1)-(2))). Aside from a few conclusory allegations, *see* Third Am. Compl. ¶¶ 258, 271, nowhere in the Complaint did Relator plead facts showing that any patient agreed to receive treatment because of a co-pay waiver or reimbursement of transportation expenses. Accordingly, the Court finds that Relator did not sufficiently plead that any patient was actually induced to receive treatment.

As Relator has not sufficiently pleaded that Remaining Defendants violated the AKS, Relator cannot prevail on his FCA claim premised on false-certification with the AKS. *See*

---

[9] Relator claims that Remaining Defendants sent the bills to create "proof of trying to collect payment" and "obfuscate its fraudulent kickback system," Third Am. Compl. ¶ 251, but there are no facts supporting this allegation and the Court will not accept this conclusory allegation as true. *See Ferrer*, 484 F.3d at 780.

*Nunnally*, 519 F. App'x at 893-94. Consequently, the Court grants the Motions to Dismiss as to Count IV.

### C. *Conspiracy*

"[T]o prove [an FCA] conspiracy, a relator must show '(1) the existence of an unlawful agreement between defendants to get a false or fraudulent claim allowed or paid by [the Government] and (2) at least one act performed in furtherance of that agreement.'" *Grubbs*, 565 F.3d at 193 (first two alterations added) (quoting *Farmer*, 523 F.3d at 343). "The particularity requirements of Rule 9(b) apply to the [FCA's] conspiracy provision with equal force" and a relator "must 'plead with particularity the conspiracy as well as the overt acts . . . taken in furtherance of the conspiracy.'" *Id.* (quoting *FC Inv. Grp. LC v. IFX Mkts., Ltd.*, 529 F.3d 1087, 1097 (D.C. Cir. 2008)). In this case, LHC Defendants argue that Relator did not plead sufficient facts on either of these elements. *See* LHC Defs.' Br. 25-26. Relator, however, did not respond to LHC Defendants' arguments, and the Court deems the conspiracy claim abandoned. *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (citation omitted). The Court further finds that Relator pleaded insufficient facts for the Court to conclude that any Defendant conspired to submit a false claim to the Government. Accordingly, the Court grants the Motions to Dismiss as to Count III.

### D. *Dismissal with Prejudice*

The Court has discretion whether to dismiss a claim with or without prejudice. *See Club Retro L.L.C. v. Hilton*, 568 F.3d 181, 215 n.34 (5th Cir. 2009). "[A]t some point, a court must decide that a plaintiff has had fair opportunity to make his case; if, after that time, a cause of action has not been established, the court should finally dismiss the suit." *Schiller*, 342 F.3d at 567 (quoting *Jacquez*, 801 F.2d at 792). "[P]leadings review is not a game where the plaintiff is permitted to file serial amendments until he finally gets it right." *United States ex rel. Adrian v.*

26

*Regents of the Univ. of Cal.*, 363 F.3d 398, 404 (5th Cir. 2004); *see also United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 387 (5th Cir. 2003) (holding that leave to amend was properly denied where the plaintiff had two prior opportunities to amend the complaint and the district court had once before granted leave to cure the complaint's lack of specificity). This is especially true where a plaintiff "did not suggest in [his or her] responsive pleading any additional facts not initially [pleaded] that could, if necessary, cure the pleading defects raised by the defendants." *Goldstein v. MCI WorldCom*, 340 F.3d 238, 255 (5th Cir. 2003). Additionally, a district court may deny the plaintiff an opportunity to replead if an amendment of a claim is futile. *See Legate*, 822 F.3d at 211 (citing *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 872 (5th Cir. 2000)).

Relator did not move for leave to amend the Third Amended Complaint. Moreover, Relator had the benefit of three amendments, *see* ECF Nos. 39, 60, 94, two prior sets of motions to dismiss, *see* ECF Nos. 31, 33, 45, 45, an extensive hearing before the Court, *see* ECF No. 83, and an opinion of this Court. *See Park*, 2018 WL 5313884, at *9. Despite being afforded significant opportunities to state his case, Relator still has not alleged sufficient facts to substantiate all but one of his claims. The Fifth Circuit has held that a court may, in its sound discretion, deny leave to amend on substantially similar facts. *See Humana Health Plan*, 336 F.3d at 387. Accordingly, in its discretion, the Court finds that Relator "has had fair opportunity to make his case," *Schiller*, 342 F.3d at 567, and grants the Motions to Dismiss as to Counts II, III, and IV against Remaining Defendants with prejudice. The Court further finds that amendment of Counts II, III, and IV would be futile.

E.    *Attorneys' Fees*

> If the Government does not proceed with the action and the person bringing the
> action conducts the action, the court may award to the defendant its reasonable
> attorneys' fees and expenses if the defendant prevails in the action and the court
> finds that the claim of the person bringing the action was clearly frivolous, clearly
> vexatious, or brought primarily for purposes of harassment.

31 U.S.C. § 3730(d)(4); *see also, e.g., United States ex rel. Bain v. Ga. Gulf Corp.*, 208 F. App'x

280, 283 (5th Cir. 2006). As the parties agree, a motion for attorneys' fees must be made "no later

than 14 days after the entry of judgment" and "specify the judgment and the statute, rule, or other

grounds entitle the movant to the award." FED. R. CIV. P. 54(d)(2)(B)(i)-(ii); Relator's Resp. in

Opp. to Defs.' Joint Mot. for Att'ys' Fees 6; Reply in Supp. of Mot. for Att'ys' Fees 2-3; *see also*

*United States ex rel. Gonzalez v. Fresenius Med. Care N. Am.*, 761 F. Supp. 2d 442, 447-48 & n.7

(W.D. Tex. 2010) (applying Rule 54(d) standard to motion for attorneys' fees under FCA). Here,

the Court has not yet entered a judgment as to any Defendant, including as to dismissed Defendants

Michael Grad, M.D., LHC of South Austin, LLC, LHC of Phoenix, LLC, and LHC of Charlotte,

LLC. Accordingly, the Court denies Defendants' Motion for Attorneys' Fees under § 3730

because it is premature.

Additionally, the Court denies the Motion for Attorneys' Fees insofar as it requests

sanctions in the form of attorneys' fees under the Court's "inherent equitable power to award

attorney's fees" because Relator "acted in bad faith, vexatiously, wantonly, or for oppressive

reasons." *Schwarz v. Folloder*, 767 F.2d 125, 132 (5th Cir. 1985) (quoting, among other things,

*Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766 (1980)). "[T]he threshold for the use of

inherent sanctioning power is high, and once the power is invoked, it must be 'exercised with

restraint and discretion.'" *Maguire Oil Co. v. City of Houston*, 143 F.3d 205, 209 (5th Cir. 1998)

(quoting *Chaves v. M/V Medina Star*, 47 F.3d 153, 156 (5th Cir. 1995)). "A court should invoke

its inherent power to award attorney's fees only when it finds that 'fraud has been practiced upon

it, or that the very temple of justice has been defiled.'" *Boland Marine & Mfg. Co. v. Rihner*, 41 F.3d 997, 1005 (5th Cir. 1995) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991)). "[W]hen there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the" Federal Rules of Civil Procedure or a federal statute, the Court should resort to its inherent power if it finds that "neither the statute nor the Rules are up to the task." *Chambers*, 501 U.S. at 32-33.

Here, the parties have not adequately addressed whether alternative grounds for imposing sanctions are available.[10] Although the Court previously found that Relator's pleading tactics may violate Federal Rule of Civil Procedure 11, *see Park*, 2018 WL 5313884, at *9; *supra* § III.A, Defendants did not move for sanctions under Rule 11. At this time, the Court declines to exercise its inherent power to sanction Relator without affording the parties an adequate opportunity to brief whether the Rules or federal statutes authorize sanctions. Accordingly, the Court denies the Motion for Attorneys' Fees insofar as it seeks sanctions. If Defendants believe that sanctions are warranted, they may file an appropriate motion.

## IV.        CONCLUSION

For the reasons discussed above, the Court grants the Motions to Dismiss as to Count I against Michael Gratch, Vu D. Nguyen, Trinity Heart Care, LHC of San Antonio, and LHC of Kansas City with prejudice, and as to Counts II, III, and IV against all Defendants with prejudice. The Court denies the Motions to Dismiss as to Count I against LHC, LHC of Austin, LHC of

---

[10] In fact, Defendants sought sanctions for the first time in their Reply. *See* Surreply in Opp. to Defs.' Mot. for Att'ys' Fees 2-3. In general, "a Court . . . will not consider arguments raised for the first time in a reply brief," *Pa. Gen. Ins. v. Story*, Civ. A. No.: 3:03CV0330-G, 2003 WL 21435511, at *1 (N.D. Tex. June 10, 2003) (citations omitted)), because the parties have not had an adequate opportunity to be heard. *Cf. Racetrac Petroleum, Inc. v. J.J.'s Fast Shop, Inc.*, Civ. A. No. 3:01-CV-1397, 2003 WL 251318, at *21 (N.D. Tex. Feb. 3, 2003).

Fort Worth, Tuan D. Nguyen, Vinh D. Nguyen, and Nima Amjadi. The Court also denies the Motion for Attorneys' Fees without prejudice.

**SO ORDERED.**

SIGNED September 17, 2019.

**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**